IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

BARBARA TEASLEY and
PATSY McFALLS,

CASE NO.:_____

Plaintiffs

V.

TOYOTA MOTOR CORPORATION;
TOYOTA MOTOR NORTH AMERICA,
INC.; TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC.; TOYOTA MOTOR SALES, USA, INC.;
ZF ACTIVE SAFETY AND
ELECTRONICS US, LLC; ZF PASSIVE
SAFETY SYSTEMS USA, INC.;
TRW AUTOMOTIVE, INC.;
ZF TRW AUTOMOTIVE HOLDINGS,
CORP.; ZF NORTH AMERICA, INC.;
ZF HOLDINGS, B.V.;
ZF FRIEDRICHSHAFEN, A.G.;
STMICROELECTRONICS N.V.;
STMICROELECTRONICS
INTERNATIONAL, N.V.; and
STMICROELECTRONICS, INC.,

Defendants

## **COMPLAINT**

**COME NOW**, the Plaintiffs, by and through counsel of record, J. Allen

Hammontree, and file this Complaint against the above-named Defendants as

follows:

1

# I.  NATURE OF THE ACTION

-1-

The Plaintiffs bring this lawsuit for injuries sustained in a motor vehicle incident involving a 2015 Toyota Avalon automobile, occurring on February 24, 2020.

-2-

To prevent injury and death from motor vehicle accidents the federal government has enacted laws and regulations that, among other measures, require passenger vehicles sold in the United States to be equipped with seat belts and airbags.

-3-

In order to legally distribute motor vehicles to dealers for sale to consumers, a manufacturer must place a permanent label on the vehicle certifying that the vehicle includes functioning airbags and seatbelts.

-4-

When a manufacturer learns of a safety defect, federal law requires the manufacturer disclose the defect to the National Highway Traffic Safety Administration ("NHTSA") and to the owners, purchasers and dealers of the vehicle. *49 U.S.C. §30118(c)*.

-5-

When a safety defect relates to a component part, the component manufacturer has a separate, independent duty to submit public reports regarding the faulty equipment to NHTSA. *49 C.F.R. §573.6(a)*.

-6-

The Defendants in this case failed to meet these basic duties in their failure to disclose a defect in the passenger safety system in the 2015 Toyota Avalon automobile in which Plaintiffs were riding. This defect also appeared in thousands of other vehicles manufactured and equipped by the Defendants. Because of this defect, the airbags and seatbelts in these vehicles, including the vehicle of Plaintiff McFALLS could fail to activate during a head-on collision.

-7-

The ZF TRW Defendants make Airbag Control Units "ACUs," to install in motor vehicles, including motor vehicles made by Toyota. These ACUs control the safety system of the vehicles. The ACUs receive and interpret signals from crash sensors located in the front of the vehicle. When the sensors detect an imminent crash, they notify the ACU, which then commands the safety system to deploy the airbags and tighten the seatbelts. When the ACU fails, the airbags and seatbelts also fail to function.

-8-

The STMicro Defendants make a microchip called the DS84 application-

3

specific integrated circuit ("ASIC"), which is a component part of the ACU.  It

processes the signal from the crash sensors and activates the airbags and seatbelts.

The ST Micro's DS84 ASIC is "the brain" of the ZF TRW ACUs, which are at

issue in this matter.  STMicro custom-manufactured the DS84 ASIC for ZF TRW

as part of ZF TRW's plan to create a smaller ACU.

-9-

The ZF TRW ACUs with the DS84 ASIC have a dangerous defect.  These

ACUs are much more vulnerable to bursts of electricity than other ACUs,

including other ZF TRW ACUs that do not include the DS84 ASIC.  This

vulnerability is dangerous, as it is commonly known within the auto industry, that

some crashes cause large bursts of electricity to discharge in the front of the

vehicle.  This is especially true in front-end collisions similar to the one

experienced by the Plaintiffs in this matter.  This discharge of stray electrical

current can cause failures in the safety systems of the vehicles.  For this reason,

ACUs must be sufficiently  protected from transient electrical currents to ensure

they will function during a crash.

-10-

In numerous past crashes, transient electricity caused by the crash itself has

overheated and rendered useless the DS84 ASIC in ZF TRW ACUs.  In those

situations, the heat has damaged the ASIC in what is called an electrical overstress

"EOS."  EOS is a well-known phenomenon in the auto industry.  In the DS 84 ASIC, EOS is especially dangerous as it can disable the ACU from functioning and cause the airbags and seatbelts to not activate during a crash.

-11-

The Defendants have known the defective ZF TRW ACUs with the DS84 ASIC were vulnerable to EOS for several years.

-12-

Despite the known risks of EOS in the ZF TRW ACUs, the Defendants continued to market and delayed recalling vehicles with defective ACUs.  Rather than timely and completely warning consumers who were operating their vehicles with the defective ACUs, the Defendants conspired to conceal the defect.

-13-

Numerous vehicles by other manufacturers containing defective ACUs by ZF TRW have resulted in known airbag failures.  NHTSA and Toyota have linked at least two fatalities to airbag failures in Toyota vehicles with the defective ACUs.

-14-

Despite the common knowledge of the defect, Toyota falsely and misleadingly assured its consumers that their vehicles were safe in advertising distributed nationwide.

-15-

However, now, Defendant TOYOTA has admitted:

5

> This ASIC does not have sufficient protection against negative electrical transients that can be generated in certain severe crashes, such as an underride frontal crash where there is a large engine compartment intrusion before significant deterioration.  In these cases, the crash sensor and other powered wiring can be damaged and shorted so as to create a negative electrical transient of sufficient strength and duration to damage the ASIC before the deployment signal is received in the [ACU]. This can lead to incomplete or nondeployment of the airbags and/or pretensioners.

-16-

Despite this admission, Toyota failed to notify and subsequently recall the vehicle of Plaintiff McFALLS until after the accident in which Plaintiffs were severely injured on February 24, 2020.

-17-

During the subject incident on February 24, 2020, the ACU malfunctioned. Consequently, the Plaintiffs' seat belt restraint system failed to tighten and the air bags failed to deploy.

-18-

As a result of the failure, the Plaintiffs both experienced frontal impact to their head and chest, hitting the steering wheel, dashboard and sustaining serious and debilitating injuries.  This accident has resulted in injuries as follows:

Plaintiff Barbara Teasley sustained severe head trauma, maxofacial and skull fractures, fractured hip, an eye injury resulting in loss of vision.

Plaintiff McFalls sustained multiple rib fractures, multiple vertebrae

fractures, facial fractures, facial lacerations and pulmonary contusions.

-19-

The Defendants were well aware of the defective nature of their vehicle due to the ACU and the danger and harm it posed to drivers such as Plaintiffs.

-20-

Plaintiffs are asserting claims for Products Liability, Strict liability, Negligence, Failure to Warn, Breach of Implied Warranty and Punitive Damages.

## II.  PARTIES

### A.    Defendants

-21-

This claim is brought against three distinct groups of Defendants which were all responsible for the design, manufacturer, distribution, advertising and communications regarding the 2015 Toyota Avalon vehicle owned by Plaintiff McFALLS.  These defendants are divided into the Toyota Group, the ZF TRW Defendants and the STMicro Defendants.

### i. The Toyota Defendants

-22-

The Toyota Defendants (referred to collectively as "Toyota") are Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering and Manufacturing North America, Inc., and Toyota Motor Sales, USA, Inc.

-23-

Defendant TOYOTA MOTOR CORPORATION, is a Japenese Corporation headquartered in Toyota City, Aichi Prefectre, Japan. Toyota is the world's largest auto manufacturer and is in the business of designing, developing, manufacturing, marketing, and selling automobiles around the world, including in the Northern District of the State of Georgia.

-24-

TOYOTA MOTOR NORTH AMERICA, INC., is a California Corporation and a wholly-owned U.S. subsidiary of Toyota Motor Corporation with a principal place of business located in Plano, Texas.  TOYOTA NORTH AMERICA, INC., is the holding company for TOYOTA MOTOR CORPORATION's North American operations and engages in business activities in furtherance of the interest of TOYOTA MOTOR CORPORATION, including sales of Toyota vehicles within the Northern District of the State of Georgia.

-25-

TOYOTA MOTOR ENGINEERING AND MANUFACTURING, INC., is a Kentucky Corporation and a wholly-owned subsidiary of Toyota Motor Corporation.  It provides centralized support to Toyota's North American manufacturing plants in areas such as purchasing, production control, production engineering, quality control, environmental and administration.  It shares responsibility for Toyota's engineering design, research and development and manufacturing activities in the United States.  This includes its work on vehicles

which are sold within the Northern District of the State of Georgia.

-26-

TOYOTA MOTOR SALES USA, INC., is a California Corporation and wholly-owned American subsidiary of Toyota Motor Corporation that engages in business activities in furtherance of the interest of its parents, including, marketing, sales and distribution of Toyota motor vehicles in the State of Georgia and specifically, the Northern District of Georgia.

### ii.  **The ZF TRW Defendants**

-27-

The ZF TRW Defendants are ZF Active Safety and Electronics, US, LLC, ZF Passive Safety Systems USA, Inc., TRW Automotive, Inc., ZF Automotive US, Inc., ZF TRW Automotive Holdings, Corp., ZF North America, Inc., ZF Holdings, B.V., ZF Friedrichshafen, A.G.  These Defendants are collectively referred to as ("ZF TRW").

-28-

ZF ACTIVE SAFETY and ELECTRONICS, US, LLC, is a Delaware LLC.  It formerly operated under the name TRW Automotive US, LLC.  It is directly involved in the manufacture and design of ZF TRW ACUs.

-29-

ZF PASSIVE SAFETY SYSTEMS, US, INC., is a Delaware Corporation.  It previously operated under the name TRW Vehicle Safety Systems, Inc.  Upon

9

information and belief, ZF PASSIVE SAFETY SYSTEMS, US, INC., is directly involved in the manufacture and design of ZF TRW ACUs.

-30-

TRW AUTOMOTIVE, INC. is a Delaware corporationand was a predecessor to ZF Automotive US, Inc. in the manufacture and design of ZF TRW ACUs.

-31-

ZF AUTOMOTIVE US, INC., is a Delaware Corporation and is the parent and owner of ZF PASSIVE SYSTEMS, US, INC., and ZF ACTIVE SAFETY AND ELECTRONICS, US, LLC.  It was formerly under the name TRW Automotive, Inc.  It is the manufacturer of the ACUs at issue in this litigation, which was in use in the Plaintiff's vehicle.

-32-

ZF TRW AUTOMOTIVE HOLDINGS, CORP., is a Delaware Corporation and is the parent and 100 percent owner of ZF AUTOMOTIVE, US, INC.

-33-

ZF NORTH AMERICA, INC., is a Delaware Corporation and is the parent and 100 percent owner of ZF TRW AUTOMOTIVE HOLDINGS, CORP.

-34-

ZF HOLDINGS, B.V., is a Netherlands Corporation and a parent and 100 percent owner of ZF NORTH AMERICA, INC.

-35-

ZF FRIEDRICHSHAFEN, A.G., is a German Corporation and the direct parent and owner of ZF HOLDINGS, B.V.

-36-

Prior to May 15, 2015 and during the time of manufacture of Plaintiff's vehicle, ZF ACTIVE SAFETY AND ELECTRONICS, US, LLC, ZF PASSIVE SAFETY SYSTEMS, US, INC., and ZF AUTOMOTIVE US, INC., operated as subsidiaries of the parent company, TRW AUTOMOTIVE HOLDINGS, CORP.

-37-

The ACUs of ZF TRW Defendants were distributed through vehicles sold in the Northern District of Georgia.

**iii.   <u>The STMicro Defendants</u>.**

-38-

The STMicro Defendants are hereafter referred to as ("STMicro") include STMICROELECTRONICS, N.V., STMICROELECTRONICS INTERNAL, N.V., and STMICROELECTRONICS, INC.

-39-

STMICRO is a multi-national group of companies that manufacture and sell semi-conductors and electronic chips.

-40-

STMICROELECTRONICS, N.V., is a company incorporated under the laws

of the Netherlands and is the parent company of the STMICRO GROUP and owner of Defendants STMICROELECTRONICS, INTERNATIONAL, N.V., and Defendant STMICROELECTRONICS, INC.

-41-

STMICROELECTRONICS, INTERNATIONAL, N.V., is a company incorporated under the laws of the Netherlands and is the parent company of the STMICRO GROUP.  The STMICRO GROUP conducts business through STMICROELECTRONICS, INTERNATIONAL, N.V.


-42-

STMICROELECTRONICS, INC., is a Delaware Corporation.  It is located in close proximity to ZF AUTOMOTIVE, US, INC.'s office in Lavonia, Michigan. It is identified as the manufacturer of the DS84 ASIC component contained in the ACU at issue in this litigation and with which Plaintiff's vehicle was equipped.

**B.**     **Plaintiffs.**

-43-

Plaintiff PATSY McFALLS is a resident of Whitfield County, Georgia. She is the owner of the 2015 Toyota Avalon Automobile with Vehicle Identification Number 4T1BK1EB9FU1633O9.

-44-

Plaintiff BARBARA TEASLEY also resides in Whitfield County, Georgia

and is the sister of Plaintiff McFALLS.

-45-

Plaintiff TEASLEY was a passenger in the Toyota Avalon of Plaintiff McFALLS on February 24, 2020.

### III. JURISDICTION AND VENUE

-46-

This Court has jurisdiction pursuant to 28 U.S.C. §1332 as Federal Diversity Jurisdiction exists.  Plaintiffs are residents of Georgia and the Defendants are corporations and entities with principal places of business in states or countries other than  Georgia. Therefore, complete diversity of citizenship exists.  The amount in controversy, exclusive of interest and costs, exceeds the sum  or value of $75,000.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

-47-

Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions on which these claims are based occurred in this district.  Specifically, the incident occurring on February 24, 2020 causing injury to the Plaintiffs occurred in Whitfield County, Georgia, which is within the Northern District of Georgia.  Additionally, Defendants have placed their product in the stream of commerce in this district and have received

substantial revenue and profits from the sales and leasing of said vehicles in this district.

## IV. TOLLING AND STATUTE OF LIMITATIONS

-48-

Any applicable Statutes of Limitations have been tolled by Defendants' knowing and active concealment and denial of the facts set forth herein.  The Plaintiffs could not have reasonably discovered the true, latent defective nature of the defect until after the damage had already been done.  The Defendants have an active duty to disclose to the Plaintiffs and the public the poor design, substandard materials or material defects and significant safety concerns.  The Defendants failed to do this prior to the incident occurring on February 24, 2020.  As a result of the concealment by Defendants and the latent nature and lack of ability to discover the defect by Plaintiffs, any and all applicable Statutes of Limitation have been tolled.

## V.  FACTS

-49-

Plaintiff PATSY McFALLS purchased the 2015 Avalon automobile with Vehicle Identification No. 4T1BK1EB9FU1633O9 on July 3, 2015 from a Toyota dealership located in Dalton, Whitfield County, Georgia.

-50-

Plaintiff BARBARA TEASLEY is the sister of Plaintiff McFALLS and was

a front-seat passenger in Plaintiff McFALL's Toyota Avalon on February 24, 2020.

-51-

The Plaintiffs were proceeding down a driveway to turn right onto Georgia Hwy. 71 in Whitfield County, Georgia.

-52-

The vehicle accelerated down the driveway reaching a speed of approximately 39 miles per hour, crossed over a private drive, struck an embankment with the front and underside of the vehicle, traveled into a wooded area and stopped with the front resting against a tree.

-53-

The vehicle airbags and seatbelt pretensioners failed to activate or function in the collision.  As a result of the failure of the ACU, the air bags did not deploy and the seatbelts did not tighten at all, rendering them useless.

-54-

The force, manner and effect of the collision was such that it should have caused the ACU to properly function resulting in deployment of the airbags and seatbelt pretensioners to fire to secure the seatbelts in place, protecting the Plaintiffs.

-55-

As a result of the failure of the ACU and safety restraint system, the

Plaintiffs slammed forward upon impact striking their bodies and faces on the interior of the vehicle.

-56-

Had the ACU and passive restraint systems of the Toyota Avalon vehicle performed properly, the air bags would have deployed and pretensioners would have secured the seatbelts protecting the Plaintiffs from severe injury and impact.

-57-

Plaintiff McFALLS was careful about performing routine and proper maintenance and keeping the vehicle in good mechanical condition through her local Toyota dealership.

-58-

After the incident and while the Plaintiffs were still hospitalized, a recall notification from Defendants TOYOTA was received at Plaintiff McFALL's home address.  This was approximately 10 days following the incident of February 24, 2020.

-59-

The recall notice sent by the TOYOTA Defendants to Plaintiff McFALLS, specifically stated that:

> "the ECU may not have adequate protection against
> certain electrical noise that can occur in certain crashes,
> such as severe underride crashes. This can lead to
> incomplete or non-deployment of the airbags and/or
> seatbelt pretensioners.  Airbag and seatbelt pretensioners
> that do not deploy as intended can increase the risk of injury
> in a crash."

-60-

The initial notice sent by TOYOTA to Plaintiff McFALLS did not provide a specific remedy but stated that a remedy was currently being prepared and Plaintiff would be notified again when it was available.

-61-

Subsequent to the initial notification, Plaintiff McFALLS received a second written notification from Defendant TOYOTA which stated that a remedy had been prepared and "any authorized Toyota dealer will install a noise filter between the airbag control module and its wire harness free of charge to you".

-62-

Defendants TOYOTA clearly had knowledge of the significant risk and hazards which resulted from the defective ACUs well prior to the incident in which Plaintiffs were injured.  However, none of the Defendants acted promptly or timely to provide adequate and sufficient notice to the Plaintiffs of this hazardous situation, which resulted in severe injury to the Plaintiffs.

-63-

The 2015 Toyota Avalon of  Plaintiff McFALLS was manufactured by Defendants TOYOTA, and contained ZF TRW ACUs with the defective DS84 ASICs from Defendants STMICROELECTRONICS.

-64-

Other vehicle manufacturers equipped with ACUs from ZF TRW with DS84 ASIC stem microchips were recalled between 2016 and 2018.

-65-

In April 2019, the NHTSA began an investigation, which included vehicles manufactured and sold by the Toyota Defendants, related to the DS84 ASICs containing ZF TRW ACUs.

-66-

All Defendants were aware of or should have been aware of the hazardous defect in vehicles with ZF TRW ACUs containing  DS84 ASICs at least as early as 2016.

-67-

The defective ZF TRW ACUs do not adequately protect the DS84 ASIC against the risk of transient electricity traveling through the sensor wiring to the ACU during a collision.

-68-

The design is such that a collision creating a surge of transient electricity through the sensory wire can cause the single ASIC to fail, thereby deactivating the entire passive safety system rendering it unable to deploy the airbags and tighten seatbelts at the very moment it is most needed.  This is exactly what occurred in the incident with Plaintiffs.

-69-

ACUs made by other manufacturers do not have the same vulnerabilities or risks attendant to transient electricity as the defective ZF TRW ACUs.

-70-

The predecessor ZF TRW ACUs used two different ASICs in place of the single DS84 ASIC.  These could also withstand much stronger electrical surges than the defective ZF TRW ACUs.

-71-

Other ZF TRW ACUs use a different ASIC called MS84.  These are also more resistant to electrical surges than the defective ZR TRW ACUs.

-72-

At least as early as 2008, ZF TRW and STMICRO knew that the ACUs with DS84 ASIC were vulnerable to EOS.  Nonetheless, they intentionally concealed this information from consumers and the NHTSA for years.

-73-

The vulnerability of these defective ACUs was clear in numerous crashes between 2011 and 2019 in which the airbags and seatbelt systems in vehicles equipped with these ACUs did not deploy.

-74-

The Defendants have repeatedly represented to consumers and to the NHTSA that vehicles like the 2015 Toyota Avalon could be relied upon to activate airbags and seatbelts during a crash.  However, they failed to disclose the known

vulnerability of the defective ZF TRW ACUs to the EOS and transient electricity which could prevent the airbags and seatbelts from activating.

-75-

The 2015 Toyota Avalon contained a sticker certifying that it complied with all safety regulations prescribed by the NHTSA and conformed to all Federal Motor Vehicle Safety Standards.  These labels affixed and provided by Defendants were false and misleading because they failed to warn the Plaintiff about the risks of ACU failure during a crash, but rather indicated that the airbag and seatbelt systems would properly function in a crash.

-76-

The manufacturers of vehicles and component parts for vehicles have a duty to disclose known safety defects to the public and to the NHTSA.  Defendant TOYOTA published Owner's Manuals that failed to mention the ACU defect. Therefore, these manuals which were directed to consumers, included misleading statements regarding the effectiveness and reliability of the seatbelts, airbags, and the ACUs.

-77-

In approximately 2009, Defendant TOYOTA began selling vehicles equipped with the defective ZF TRW ACUs containing the DS84 ASIC.

-78-

This includes the 2015 Toyota Avalon vehicle of Plaintiff McFALLS.

-79-

The 2015 Avalon automobile was covered in the NHTSA's investigation into the potentially defective ZF TRW ACUs.

-80-

There were at least two fatalities linked by NHTSA to TOYOTA vehicles where the airbags failed to deploy.

-81-

As previously set forth in the Notices attached to this Complaint, TOYOTA admitted that the ZF TRW ACUs with the DS84 ASIC were defective in January, 2020.

-82-

As early as 2012, numerous consumers had reported to NHTSA that airbags and seatbelts in Toyota vehicles containing the ECU and component parts failed to activate during serious incidents.

-83-

Upon information and belief, Defendant TOYOTA monitors NHTSA complaints regarding their vehicles.  In approximately 2015, the Defendants began implementing design changes to defective ZF TRW ACU installed in Toyota vehicles for sale in Europe, but decided not to make any changes to the same defective ACUs installed in Toyota vehicles in the United States.

-84-

As shown in documents produced by Defendant ZF TRW to the NHTSA in connection with an investigation of vehicles equipped with the DS84 ASIC, Toyota returned multiple vehicles to Defendant ZF TRW showing signs of EOS with a DS84 ASIC between December 16, 2013 and October 25, 2016.

-85-

Defendants made misleading statements and omitted material facts about the airbags, seatbelts and ACUs in Toyota vehicles, including the 2015 Toyota Avalon in its interstate mail and wire.

-86-

Defendant gave false and incorrect certifcations of safety standards by affixing certifications to their vehicles transmitted through interstate shipment channels, including the vehicle of Plaintiff.

-87-

In an October 15, 2015 press release for the Toyota Avalon automobile, Defendant TOYOTA promised "safety in all directions" as "the Avalon comes equipped with 10 standard airbags."

-88-

TOYOTA's advertising uniformly omitted any warning that it's vehicles were equipped with ACUs that were vulnerable to EOS and that could result in

22

airbags and seatbelt failures.

-89-

TOYOTA's notification and recall did not occur promptly or effectively enough to prevent an incident which resulted in severe injury and damage to the Plaintiffs.

## VI.  COUNT ONE

## NEGLIGENCE, PRODUCTS LIABILITY AND DESIGN DEFECT

-90-

Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 89 as if fully restated.

-91-

At all times relevant herein, Defendants designed, selected, inspected, tested, assembled, equipped, marketed, distributed, supplied and/or sold the 2015 Toyota Avalon of Plaintiff McFALLS and its component parts.

-92-

At all times relevant to this action, Defendants were responsible for the design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution and sale of  a defective unreasonably dangerous automobile due to its defective ACU and passive restraint system.

## VII.  COUNT II

## NEGLIGENCE, PRODUCTS LIABILITY,  MANUFACTURING DEFECT

-93-

Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 92 as if fully restated.

-94-

At all times relevant herein, Defendants took part in and were responsible for the manufacture, selection, inspection, testing, design, assembly, equipping, marketing distribution or supplied parts and/or sale of the 2015 Toyota Avalon vehicle and its components, including, but not limited to, the defective ACU and passive restraint system.

-95-

Defendants manufactured the vehicle of Plaintiff and its retraint system and the ACU airbag components.  Each Defendant owed Plaintiffs a duty of reasonable care to manufacture, select, inspect, test, assemble, equip, market, distribute and sell the vehicle and its components, including the ACU and airbag system so that it would provide a reasonable degree of occupant protection and safety, especially during normal routine driving.

-96-

At all times relevant herein, as manufactured, selected, inspected, tested, assembled, equipped, marketed, distributed and supplied, the ACU components used by Defendants for the 2015 Toyota Avalon vehicle is and were defective, unreasonably dangerous and unsafe for civil users and occupants because the

airbag system was inadequately designed and constructed and failed to provide the degree of occupant protection and safety.

-97-

At all times relevant herein, the Defendants each were collectively and respectively grossly negligent, careless and breached their duties of care owed to the Plaintiffs by:

a)     failing to adopt adequate safety procedures and policies;

b)     failing to manufacture, test, assemble, and/or install the airbag system so as to prevent it from being rendered useless in a collision similar to that of Plaintiffs;

c)     failing to exercise reasonable care in the manufacture of the subject vehicle and its airbag system;

d)     failing to exercise reasonable care in the testing of the subject vehicle and its airbag system;

e)     failing to adopt adequate warnings regarding the subject vehicle and its airbag system;

f)     failing to incorporate appropriate quality assurance procedures and design of the subject vehicle's airbag system;

g)     failing to timely institute recalls upon knowledge of the defect.

## VII - COUNT THREE

## STRICT LIABILITY AND TORT O.C.G.A. §51-1-11.1

-98-

Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 97 as if fully restated.

-99-

Pursuant to O.C.G.A. §51-1-11.1, Defendants are strictly liable for designing, testing, manufacturing, distributing, selling, supplying, and/or placing defective and unreasonably dangerous product into the stream of commerce.

-100-

At all times relevant herein, the 2015 Toyota Avalon vehicle of Plaintiff McFALLS and its ACU, seatbelt, airbag system and component parts were defective and unreasonably dangerous as to its design, manufacture, distribution, warnings, causing the vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

-101-

At all times relevant herein, the Defendants took some part in the manufacture and sale of the subject vehicle, its airbag system, ACU and restraints prior to the incident of February 24, 2020.

-102-

At all times relevant herein, the subject vehicle of Plaintiff McFALLS was being used in an intended and/or foreseeable manner when the accident herein

occurred.

-103-

The subject vehicle was in the same or substantially similar condition that it was at the time of purchase.

-104-

At all times relevant herein, the subject vehicle is and was unreasonably dangerous and defective because it was designed, manufactured and/or sold with a defective seatbelt and airbag system.

-105-

At all times relevant herein, the Defendants were aware of feasible and practical alternative designs which would have minimized or eliminated altogether the risk of injury posed by the vehicle and its airbag system and ACU.

-106-

At all times relevant herein, Defendants had a duty to warn users of the dangers associated with the vehicle and its ACU, airbag system and passive restraint system.

-107-

At all times relevant herein, the Defendants failed to warn of the inherent and latent defects that made the 2015 Toyota Avalon motor vehicle of Plaintiff unsafe for its intended use.

-108-

At all times relevant herein, Defendants failed to design, test, manufacture, inspect and/or sell a product that was safe for its intended use.

## VIII- COUNT FOUR

## FAILURE TO WARN

-109-

Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 108 as if fully restated.

-110-

At all times relevant herein, Defendants as manufacturers, suppliers of parts and distributors of the subject vehicle and its safety restraint and ACU, owed duties to warn Plaintiffs of foreseeable dangerous conditions of the subject vehicle which would impact its safety.

-111-

At all times relevant herein, the Defendants knew, or should have known, that the 2015 Avalon and its safety restraint, airbag system and ACU were defective, particulary, with a frontal collision.

-112-

At all times relevant herein, the Defendants had no reason to believe that users would realize this potential danger, including the Plaintiffs.

-113-

At all times relevant herein, the Defendants have affirmatively failed to exercise reasonable care to inform users of the vehicle's dangerous condition created by the defective ACU and passive restraint system.

## IX.  COUNT FIVE

## BREACH OF IMPLIED WARRANTIES

-114-

Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 113 as if fully restated.

-115-

At all times relevant herein, the Defendants were and are merchants within the meaning of O.C.G.A. §11-2-104.

-116-

The Defendants impliedly warranted that the 2015 Toyota Avalon  of Plaintiff McFALLS was merchantable and that it was fit for ordinary purposes as a safe passenger vehicle and that it was adequately contained, packaged and labeled.

-117-

At all times relevant herein, the Defendants breached the implied warranty of merchantability as to the 2015 Toyota Avalon, as it was not fit for the ordinary purpose for which it was anticipated as a safe passenger motor vehicle.

-118-

Specifically, the vehicle's passive restraint system and ACU were

unreasonably dangerous and defective because they were designed, manufactured and sold defective and in such a way as would not pass without objection in the trade.

-119-

Defendants further breached the implied warranty of merchantability to Plaintiffs because the vehicle was not adequately contained, packaged and labeled in that the directions and warnings that accompany the vehicle did not warn the owner of the defective ACU, airbag and passive restraint system which could fail.

## X. COUNT SIX

## STRICT LIABILITY, DUTY TO WARN, FAILURE TO INSPECT

-120-

Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 119 as if fully restated.

-121-

Under O.C.G.A. §51-1-11.1, Defendants are strictly liable to the Plaintiffs for failing to warn occupiers such as Plaintiffs of the defective airbag ACU in the 2015 Toyota Avalon.

-122-

The Defendants breach of this statutorily imposed warranty, whether expressed or implied, gives rise to strict liability.

-123-

At all times relevant herein, the Toyota Avalon vehicle and its airbag system was defective and unreasonably dangerous as to its design, manufacture, distribution and warnings causing the vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

-124-

At all times relevant herein, all Defendants took some part in the manufacture, sale and distribution of the subject vehicle and its defective airbag system.


-125-

At all times, the subject vehicle that Plaintiffs occupied was defective and unsafe.  These defects caused serious injury to the Plaintiffs in an intended and foreseeable manner.

-126-

At all times relevant, the subject vehicle was being used in an intended and/or forseeable manner when the injury to Plaintiffs occurred. The Plaintiffs neither misused nor materially altered the vehicle.

-127-

At all times relevant herein, the subject vehicle was and is unreasonably dangerous and defective because of its design.

-128-

At all times relevant herein, the Defendants had a duty to warn Plaintiffs of the dangers associated with the vehicle and its defective ACUs and passive restraint system.  The Defendants failed to exercise reasonable care to inform the Plaintiffs of the vehicle's dangerous condition created by the faulty ACU and its component parts.

## XI.  DAMAGES

-129-

Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1 through 128 as if fully restated.

-130-

As the direct and proximate result of the acts of Defendants as set forth herein, Plaintiffs have sustained serious and debilitating bodily injuries which include :

Plaintiff Barbara Teasley sustained severe head trauma, maxofacial and skull fractures, fractured hip, an eye injury resulting in loss of vision.

Plaintiff McFalls sustained multiple rib fractures, multiple vertebrae fractures, facial fractures, facial lacerations and pulmonary contusions.

-131-

As the direct and proximate result of the Defendants' acts as set forth herein, Plaintiffs have each incurred medical expenses in excess of $200,000.00. Plaintiffs will continue to incure medical expenses due to their injuries.

-132-

As the direct and proximate result of the Defendants' acts as set forth herein, Plaintiffs have each incurred damages in the form of past, present and future physical and mental pain and suffering.

-133-

All applicable Statute of Limitations have been tolled by Defendants' knowing, acting, and ongoing fraudulent concealment of the facts set forth herein.

-134-

The Defendants concealed the defects, minimized the cause, effects and dangers of the defects and failed to disclose a remedy of the defects.

-135-

The conduct of each Defendant as set forth herein above was intentional, willful, wanton, oppressive, malicious and reckless evidencing such an entire want of care as to raise the presumption of a conscience indifference to the consequences in that each Defendant acted only out of self interest and personal gain.

-136-

The Defendants engaged in a cost benefit analysis.  Such conduct evidenced a specific intent to cause harm to the Plaintiffs as provided under O.C.G.A. §51-12-5.1.

-137-

Due to the numerous complaints and knowledge the Defendants had of the defective condition and their failure to act appropriately, punitive damages should be imposed against each Defendant pursuant to O.C.G.A. §51-12-5.1.

WHEREFORE, Plaintiffs pray:

a)      that they have damages as set forth herein;

b)      that they have trial by jury;

c)      that they have such other and further relief as the court deems just and equitable.

This 23rd day of February, 2022

Respectfully submitted,

**J. Allen Hammontree**
Georgia State Bar No.: 321651
Attorney for Plaintiffs
Goddard & Hammontree, LLC
2716 Cleveland Hwy.
Dalton, Georgia 30721
(706) 278-0464
ahammontree@goddardhammontree.com