**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| BARBARA TEASLEY and PATSY McFALLS,<br><br>      Plaintiffs,<br><br>V.<br><br>TOYOTA MOTOR CORPORATION; TOYOTA MOTOR NORTH AMERICA, INC.; TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.; TOYOTA MOTOR SALES, USA, INC.; ZF ACTIVE SAFETY AND ELECTRONICS US, LLC; ZF PASSIVE SAFETY SYSTEMS USA, INC.; TRW AUTOMOTIVE, INC.; ZF TRW AUTOMOTIVE HOLDINGS, CORP.; ZF NORTH AMERICA, INC.; ZF HOLDINGS, B.V.; ZF FRIEDRICHSHAFEN, A.G.; STMICROELECTRONICS N.V.; STMICROELECTRONICS INTERNATIONAL, N.V.; and STMICROELECTRONICS, INC.,<br><br>      Defendants. | CASE NO.: 4:22-cv-00049-JPB |

**DEFENDANT STMICROELECTRONICS, INC.'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

I.     INTRODUCTION .........................................................................................1

II.    STATEMENT OF RELEVANT ALLEGATIONS .......................................2

III.   ARGUMENT AND CITATION OF AUTHORITIES ..................................3

   A.    THIS COURT LACKS PERSONAL JURISDICTION OVER ST INC...3

     1.    ST Inc. is not subject to general jurisdiction in this Court....................4

     2.    ST Inc. is not subject to the Georgia long-arm statute..........................5

        a.    Plaintiffs' undifferentiated allegations do not meet their burden. ...6

        b.    Because they do not show the purposeful consummation of business here, Plaintiffs' stream of commerce allegations are insufficient.............7

        c.    Plaintiffs allege no tortious conduct in Georgia. ............................9

     3.    Exercising jurisdiction would violate ST Inc.'s due process rights....10

     4.    ST Inc. has carried its burden to refute jurisdiction. ...........................14

   B.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ST INC. ...........15

     1.    Plaintiffs' Complaint is an impermissible shotgun pleading. .............15

     2.    Plaintiffs' product liability claims are inadequately pleaded.............17

        a.    Plaintiffs fail to state a design defect claim (Count I). .................17

        b.    Plaintiffs fail to state a manufacturing defect claim (Count II). ....20

        c.    Strict liability only applies to manufacturers, not sellers like ST Inc. (Count III). ..........................................................................................21

        d.    The sophisticated intermediary doctrine cuts off any liability against ST Inc. for the alleged failure to warn or inspect (Counts IV and VI)..22

     3. No implied warranty claim (Count V) can stand because Plaintiffs lack privity with ST Inc.........................................................................................24

IV.   CONCLUSION............................................................................................25

Defendant STMicroelectronics, Inc. ("ST Inc.") moves the Court to dismiss with prejudice Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and for failure to state a claim.

## I.   <u>INTRODUCTION</u>

Plaintiffs filed this product defect case against fifteen Defendants including various Toyota entities, several ZF entities, ST Inc. and two foreign ST entities that have not been served. Plaintiffs' claims concern allegedly defective airbag control units ("ACUs") allegedly containing the DS84 ASIC that are supposedly vulnerable to electrical overstress ("EOS"). Plaintiffs allege that the ST entities supplied the DS84 ASIC to ZF, which integrated the part into its ACU, and then sold the ACU to the Toyota Defendants. The Toyota Defendants then in turn sold the vehicle in Georgia through an unidentified dealership. Compl. ¶ 39–42.

The claims against ST Inc. are each subject to dismissal. First, this case cannot proceed against ST Inc. because the Court lacks personal jurisdiction over it. As a nonresident business with no Georgia presence, ST Inc. is not subject to Georgia courts' general jurisdiction. Nor do Georgia's long-arm statute or Constitutional Due Process protections permit the Court to exercise specific personal jurisdiction over the claims brought against ST Inc. At most, Plaintiffs have alleged that ST Inc. was a subcomponent supplier that sold a single part to another component manufacturer

1

*outside* Georgia. ST Inc. had no other role in designing, manufacturing, installing, assembling, distributing, advertising, or selling the ACU or the Toyota vehicle at issue. On similarly sparse allegations, the Central District of California dismissed claims against ST Inc. for want of jurisdiction. This Court should do the same.

Beyond jurisdiction, Plaintiffs' product liability claims also fail to state a claim. First, Plaintiffs' shotgun pleading blurs the lines between all Defendants, and either omits factual allegations required to state a claim, or pleads facts that, even if taken as true, negate their causes of action. Second, Plaintiffs' product liability claims fail because they have not pleaded that the DS84 ASIC is defective, and their claims are cut off by other parties in the supply chain under the sophisticated intermediary doctrine. Finally, Plaintiffs' warranty claims fail as they lack privity with ST Inc.

## II.    STATEMENT OF RELEVANT ALLEGATIONS

The Complaint's threadbare jurisdictional allegations confirm that ST Inc. is not a Georgia resident and identify no specific contact with the State. Compl., ¶¶ 38–42. Plaintiffs articulate only one undifferentiated personal jurisdiction theory against all Defendants: that an injury occurred in Georgia and that "Defendants have placed their product in the stream of commerce in this district and have received substantial revenue and profits" therefrom. *Id.* ¶ 47.

Plaintiffs claim a 2015 Toyota Avalon was purchased in July 2015 from a Toyota dealership in Whitfield County. *Id.* ¶ 49. Plaintiffs claim an accident occurred on February 24, 2020, also in Whitfield County, during which the airbags and seatbelt pretensioners should have activated. *Id.* ¶¶ 51, 53. Plaintiffs allege that the airbags did not deploy, and the seatbelts did not tighten due to the failure of the ZF ACU, which allegedly contained a "DS84 ASIC," which Plaintiffs claim that an ST entity—though Plaintiffs do not specify which—allegedly manufactured. *Id.* ¶¶ 8, 42, 53, 63. Plaintiffs do not allege that the DS84 ASIC or the ACU were designed, manufactured, installed, assembled, distributed, advertised, or sold in Georgia. Plaintiffs allege only a vehicle purchase in Georgia.

Based on these allegations, Plaintiffs assert a products liability action against ST Inc. and two foreign ST entities—which have not yet been served and have not appeared—for design defect, manufacturing defect, strict products liability, failure to warn, breach of implied warranties, and strict liability for failure to warn. None of these claims should survive.

## III.   ARGUMENT AND CITATION OF AUTHORITIES

## A.   THIS COURT LACKS PERSONAL JURISDICTION OVER ST INC.

Plaintiffs do not allege facts supporting this Court's personal jurisdiction over ST Inc. Nor could they, given the attached sworn evidence. In this Circuit, a three-

step analysis governs Rule 12(b)(2) motions. First, the plaintiff "bears the initial burden of alleging" facts establishing "a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).[1] If the plaintiff fails to carry the initial burden, "the district court doesn't go to the second and third steps," and the motion to dismiss should be granted. *Diulus v. Amer. Express Travel Related Servs. Co.,* 823 F. App'x 843, 848 (11th Cir. 2020). If, however, "the defendant challenges jurisdiction" with evidence, then "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Diamond Crystal*, 593 F.3d at 1257. Finally, if the evidence conflicts, the Court must "construe all reasonable inferences in" plaintiff's favor. *Id.*

Plaintiffs must show that the court can exercise either general ("all purpose") or specific ("case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1779–80 (2017). Plaintiffs cannot meet their burden showing either.

**1. ST Inc. is not subject to general jurisdiction in this Court.**

As the Supreme Court has repeatedly held, a corporation is subject to general jurisdiction only where it is "at home," meaning, "where it is incorporated or has its

---

[1] In citations throughout this brief, emphasis is added, and internal citations, quotations, and alterations are omitted, unless otherwise noted.

principal place of business." *Ford Motor Co. v. Montana Eighth Jud. Dist.*, 141 S.

Ct. 1017, 1024 (2021); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

ST Inc. is not "at home" in Georgia. Plaintiffs concede ST Inc. "is a Delaware

Corporation," and agree that ST Inc.'s principal place of business is outside of

Georgia. Comp. ¶¶ 42, 46; *see also* Hutter Decl., ¶ 3, attached as Exh. A. Indeed, ST

Inc.'s principal place of business is in Texas. Hutter Decl., ¶ 3. Because ST Inc. is

not at home in Georgia, it is not subject to general personal jurisdiction in Georgia.

## 2. ST Inc. is not subject to the Georgia long-arm statute.

An out-of-state defendant must do "certain acts within" Georgia before it is

subject to jurisdiction here. *Innovative Clinical & Consulting Servs., LLC v. First

Nat. Bank of Ames*, 279 Ga. 672, 673 (2005). Under Georgia law, the Court must

first determine whether the exercise of jurisdiction is appropriate under Georgia's

long-arm statute, O.C.G.A. § 9-10-91; *Diamond Crystal*, 593 F.3d at 1257. If so, the

Court must then assess whether exercising personal jurisdiction over the defendant

would comport with due process. *Id.* This Court lacks specific jurisdiction over ST

Inc. as neither the statutory nor the constitutional requirements have been met.

Relevant here, Georgia's long-arm statute provides that a court may exercise

personal jurisdiction over a nonresident that (1) "Transacts any business within this

state," (2) "Commits a tortious act or omission within this state," or (3) "Commits a

tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue . . . in this state." O.C.G.A. § 9-10-91. Plaintiffs satisfy none of these requirements as to ST Inc.

### a.  Plaintiffs' undifferentiated allegations do not meet their burden.

The Complaint lacks the specificity necessary to show that ST Inc. has any contact with Georgia. Plaintiffs allege the "STMicro" defendants are "a multi-national group of companies," with different ownership structures and locations, who supplied a single part to the ZF defendants, who then integrated it into its ACU, and then sold the ACU to the Toyota defendants, who, through an unidentified dealership, sold the vehicle in Georgia. Comp. ¶ 8, 37–42, 49. Plaintiffs' allegations as to the "STMicro" defendants' conduct (or to "the defendants'" conduct more broadly) do not establish sufficient Georgia contacts.

As this Court has held, Plaintiffs must state "specific jurisdictional allegations with respect to *each* company" to satisfy their prima facie burden. *Pounds v. Kenda Rubber Indus. Co. Ltd.*, 1:18-CV-05092-JPB, 2020 WL 11192767, at *4 (N.D. Ga. Feb. 25, 2020). "It is improper to lump [defendants] together without any attempt to state specific jurisdictional allegations with respect to each company." *Id.* "Each defendant is entitled to an individual evaluation of his claim that the Court lacks

jurisdiction over his person." *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1332 (N.D. Ga. 2016). Plaintiffs here allege no facts showing ST Inc.'s contacts—as opposed to those of any other defendant—with Georgia. Thus, this Court should dismiss for a lack of personal jurisdiction.

### b. Because they do not show the purposeful consummation of business here, Plaintiffs' stream of commerce allegations are insufficient.

Even if this Court were to consider Plaintiffs' undifferentiated allegations, this Court's decisions confirm they are insufficient. In *Brantley v. Tiffin Motor Homes Inc.*, for example, this Court concluded that allegations that the defendant conducted business with "the public at large," placed its items "into the stream of commerce," and manufactured a defective vehicle were insufficient to satisfy any of the prongs of Georgia's long-arm statute. 1:21-CV-02228-JPB, 2022 WL 444474, at *2 (N.D. Ga. Feb. 14, 2022). Plaintiffs' allegations are even weaker than the *Brantley* allegations this Court dismissed. Plaintiffs do not, for example, allege that ST Inc. manufactured the vehicle or the defective ACU, but contend only that ST Inc. supplied a component part to manufacturers somewhere outside Georgia.

That is insufficient to allege that ST Inc. "transacts" business in Georgia. "[T]ransacting business" demands that the "nonresident [have] purposefully consummated some transaction" here and that the plaintiff's claims arise from those contacts. *Object Techs., Inc. v. Marlabs, Inc.*, 246 Ga. App. 202, 202 (2000).

Plaintiffs cannot meet that burden. The Complaint lacks any allegation ST Inc. had Georgia contacts, much less those giving "rise to [Plaintiffs'] claims." *Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1334 (N.D. Ga. 2013).

*Kason* involved claims that defendant Dent manufactured and sold hinges infringing on Kason's patent. *Id.* Like here, Kason alleged that Dent sold the hinges to other manufacturers outside Georgia, that those manufacturers incorporated the hinges into other products distributed in Georgia, and that Dent had an "established distribution network" and "place[d] its offending products into the stream of commerce" expending Georgia consumers to purchase them. *Id.*

Judge Batten found those allegations insufficient because Kason did not allege that Dent directly sold its accused products to customers in Georgia and did not allege (nor submit evidence) that Dent sold the hinges to any manufacturers in Georgia. *Id.* The stream of commerce allegations also failed to plead that Kason purposefully consummated any transaction in Georgia. *Id.* Similarly, allegations that an infringing component had been "incorporated into products" that were later sold in Georgia were not enough to demonstrate that the defendant transacted business in the state. *Id.* at 1345.

Likewise here, Plaintiffs' allegations at best support an argument that ST Inc. performed acts or omissions *outside* the state that caused an injury in Georgia. But

8

they lack the facts needed to show that ST Inc. engaged in the purposeful activities required to support jurisdiction under subsection (3) of Georgia's long-arm statute. *See id.*; *Pounds*, 2020 WL 11192767, at *4; *Brantley*, 2022 WL 444474, at *2.

### c. Plaintiffs allege no tortious conduct in Georgia.

Nor do Plaintiffs' allegations support a prima facie case of jurisdiction under subsection (2) of the long-arm statute. "[T]he clear language of subsection (2) requires that the nonresident defendant commit a tortious act *in the state of Georgia*." *Pounds*, 2020 WL 11192767, at *3 (emphasis in original). "[S]hipping a defective product to Georgia is not a sufficient basis for personal jurisdiction under subsection (2)." *Thomas v. Strange Eng'g, Inc.*, CV 111-074-JRH, 2012 WL 993244, at *4 (S.D. Ga. Mar. 22, 2012). Thus, allegations that ST Inc. supplied a subcomponent to a manufacturer *outside* of Georgia—even if eventually incorporated into a product that made its way to Georgia—are not enough. And while Plaintiffs allege that "Defendants designed, selected, inspected, tested, assembled, equipped, marketed, distributed, supplied, and/or sold" the vehicle "and its component parts," Plaintiffs do not tie that supposed involvement to Georgia. Compl. ¶ 91.

Plaintiffs' allegations are akin to those in *Pounds*, where this Court dismissed claims against bicycle tire and tube manufacturers and distributers that never sold or distributed parts in Georgia, had "no distributors or customers here;" maintained no

offices in Georgia, "never executed a contract or provided any services here;" "never owned, rented or leased any real or personal property" and owned no "assets in the state." 2020 WL 11192767, at *4.

### 3. Exercising jurisdiction would violate ST Inc.'s due process rights.

Even if ST Inc. were subject to Georgia's long-arm statute (and it is not), that statute only extends to the reaches of the U.S. Constitution's limits. *Diamond Crystal Brands*, 593 F.3d at 1267. The Constitution still acts as a limit on the exercise of personal jurisdiction and prohibits the exercise of jurisdiction over a non-resident defendant unless that defendant has established "certain minimum contacts" with Georgia so that the suit's maintenance "does not offend traditional notions of fair play and substantial justice." *Id.* Plaintiffs here have not met their burden to show that the Due Process Clause permits the exercise of jurisdiction.

In fact, in another airbag case involving many of the same parties (including ST Inc.), and upon which Plaintiffs' Complaint here appears based, the Central District of California ruled just a few months ago that similar jurisdictional allegations were inadequate. *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. 2:19-ml-02905 (JAK) (PLA), Dkt. 396 (C. D. Cal. Feb. 9, 2022), at 50–54. Specifically, the Court ruled that allegations ST Inc. "manufactured and placed into the stream of commerce a product that foreseeably could end up" in those states were

wholly insufficient to establish that ST Inc. committed acts "purposefully directed toward a forum state." *Id.* at 51. The California Court thus ruled that Plaintiffs had not established a relationship between their claims and ST Inc.'s conduct in either Florida or California. *Id.* It only permitted claims brought in Michigan to proceed because (as Plaintiffs also note here) ST Inc. has a presence in Michigan. Compl. ¶ 42. For the same reasons, and to avoid inconsistent rulings, these claims should similarly be dismissed, as Plaintiffs have not established any presence in Georgia related to their claims.

Again, ST Inc. does not have sufficient minimum contacts with Georgia. Plaintiffs' only allegations are that *after* ST Inc. manufactured and supplied the DS84 ASIC to ZF, an ACU containing the DS84 ASIC ended up in a vehicle that was in turn sold and used in Georgia. But Plaintiffs do not allege that ST Inc. had any expectation that this part would end up in Georgia. Nor do Plaintiffs allege that ST Inc. was involved in determining how or where DS84 ASICs would be incorporated into ACUs, how or where those ACUs would be installed into vehicles, where those vehicles would be imported and distributed to dealers, or where dealers would sell the vehicles to customers. In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Supreme Court held that such "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a

defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." 466 U.S. 408, 417 (1984). Thus, the ZF and Toyota Defendants' unilateral activities in incorporating the DS84 ASIC subpart into other components, which were then incorporated into vehicles, is insufficient to justify jurisdiction over ST Inc. here.

Nor do Plaintiffs' stream of commerce allegations establish that ST Inc. has sufficient minimum contacts with Georgia. The United States Supreme Court has long rejected the argument that merely placing products into a "stream of commerce" establishes sufficient forum-related contacts to warrant the exercise of personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 112 (1987). Something more is required. That something more is missing here.

Recent Supreme Court decisions also confirm that a "plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct. at 1786). Mere awareness that components would eventually be incorporated into products sold in a forum does not constitute purposeful availment. *Asahi*, 480 U.S. at 112; *Bristol-Myers*, 137 S. Ct. at 1777. As a result, Plaintiffs must show more than that a product ST Inc. sold could end up in Georgia. They must plead and prove that ST Inc. deliberately "reached out

beyond its home" to avail itself of jurisdiction here. *Ford*, 141 S. Ct. at 1025. For example, in *Ford*, the Supreme Court found that jurisdiction was warranted because of Ford's substantial advertising—"billboards, TV and radio spots, print ads, and direct mail"—encouraging residents of the forum states to buy the same model vehicles that were at issue in that lawsuit. *Id.*

Plaintiffs allege no such activities by ST Inc. in Georgia. Nor do Plaintiffs allege that ST Inc. had a role in bringing any vehicles, ACUs, or DS84 ASICs to Georgia. A bare allegation that an injury occurred in Georgia because of "an act or omission by a nonresident outside this forum does not necessarily show that the defendant had such contact with Georgia to confer jurisdiction over him, . . . rather than being merely involved in a connection with a forum plaintiff due to [another's] unilateral actions within the state." *McDonnell v. Roy E. Beatty & Assocs., Inc.*, 203 Ga. App. 807, 810 (1992). Under applicable law, the Complaint does not allege facts suggesting that ST Inc. "reached out" to Georgia. *See Ford*, 141 S. Ct. at 1025.

Moreover, exercising jurisdiction over ST Inc. would be unreasonable and unfair. Courts in this Circuit consider several factors when a party attempts to hale an out-of-state defendant into court, including the defendant's burden "in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990). These factors weigh against exercising jurisdiction here.

For example, ST Inc.'s burden in defending itself in Georgia is high. The bulk of witnesses and relevant documents, including those showing what role (or lack thereof) ST Inc. had in selling, designing, and manufacturing the allegedly defective component, are located outside of Georgia, given that ST Inc. has no offices in Georgia. *See* Hutter Decl. ¶ 4. Moreover, Georgia's judicial and policy interests cannot create jurisdiction where it otherwise does not exist. Nor would interstate interests be served by haling corporate entities into whatever forum their products happen to end up. Due process concerns require ST Inc.'s dismissal.

**4.  ST Inc. has carried its burden to refute jurisdiction.**

For the reasons described above, Plaintiffs have not met their burden to show a prima facie case of jurisdiction. But even if they had, ST Inc. has provided sworn evidence refuting any allegations that might support personal jurisdiction. ST Inc. does not "transact" business in Georgia, did not commit a tortious act in Georgia, and does not have sufficient contacts to otherwise establish jurisdiction over it in Georgia. ST Inc. has no offices, plants, or property in Georgia. Hutter Decl, ¶¶ 4-5.

It did not design, market, or advertise the DS84 ASIC in Georgia. *Id.* ¶¶ 6-7. ST Inc. had a limited role as a subcomponent supplier that sold DS84 ASICs to ZF, but those sales occurred entirely outside of Georgia. *Id.* ¶ 5. Plaintiffs have therefore failed to allege a prima facie case of jurisdiction and this Court need not go further. *Diamond Crystal*, 593 F.3d at 1257.

## B.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ST INC.

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," and must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Complaint fails this standard.

### 1.  Plaintiffs' Complaint is an impermissible shotgun pleading.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Shotgun pleadings are those that, among other things, (1) combine multiple claims against multiple defendants without specifying which defendant is responsible for which act; (2) include multiple counts that each adopt the allegations of the preceding counts; and (3) make conclusory, vague, and immaterial facts that do not connect to

a particular cause of action. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Plaintiffs' Complaint suffers from all three problems.

*First,* each count lumps all defendants together, making it impossible to discern which defendant allegedly did what:

| Complaint ¶ | Lumped Allegation vs "Defendants" |
|---|---|
| 91, Count I | "Defendants designed, selected, inspected, tested, assembled, equipped, marketed, distributed, supplied and/or sold the 2015 Toyota Avalon of Plaintiff McFALLS and its component parts." |
| 95, Count II | "Defendants manufactured the vehicle of Plaintiff and its retraint [sic] system and the ACU airbag components." |
| 101, Count III | "At all times relevant herein, the Defendants took some part in the manufacture and sale of the subject vehicle, its airbag system, ACU and restraints prior to the incident of February 24, 2020." |
| 113, Count IV | "At all times relevant herein, the Defendants have affirmatively failed to exercise reasonable care to inform users of the vehicle's dangerous condition created by the defective ACU and passive restraint system." |
| 119, Count V | "Defendants further breached the implied warranty of merchantability to Plaintiffs because the vehicle was not adequately contained, packaged and labeled in that the directions and warnings that accompany the vehicle did not warn the owner of the defective ACU, airbag and passive restraint system which could fail." |
| 128, Count VI | "At all times relevant herein, the Defendants had a duty to warn Plaintiffs of the dangers associated with the vehicle and its defective ACUs and passive restraint system." |

*Second,* each count incorporates all preceding paragraphs. Compl., ¶¶ 90, 93, 98, 109, 114, and 120. *Third,* each count is merely a conclusory elemental recitation with no factual connections.

The Eleventh Circuit scrutinizes pleadings that fail to distinguish among multiple defendants although "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). As shown above, those same concerns plague Plaintiffs' complaint. Differentiating among the defendants here is vital because, as explained below, Plaintiffs' strict liability and failure to warn claims depend on precisely which defendant was responsible for manufacturing which product. Because the Complaint is a "quintessential shotgun pleading," this Court should dismiss all claims brought in it. *Inform Inc. v. Google LLC*, No. 1:19-CV-05362-JPB, 2021 WL 4295151, at *5 (N.D. Ga. Sept. 20, 2021).

### 2. Plaintiffs' product liability claims are inadequately pleaded.

#### a. Plaintiffs fail to state a design defect claim (Count I).

"[A] manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury." *Woods v. A.R.E. Accessories, LLC*, 345 Ga. App. 887, 890 (2018). At the "heart" of Georgia's test is the reasonableness of a defendant's design choices. *Jones v. NordicTrack, Inc.*, 274 Ga. 115, 118 (2001). The Georgia Supreme Court uses an eight-factor test in design defect cases, under which "the risks inherent in a product design are weighed against the [product's] utility or benefit." *Banks v. ICI Ams., Inc.*, 264 Ga. 732, 734 (1994). Liability for a

design defect attaches "*only* when the plaintiff proves that the seller failed to adopt a reasonable, safer design that would have reduced the foreseeable risks of harm presented by the product." *Woods,* 345 Ga. App. at 890.

Because Georgia law requires plaintiffs to prove that a "[defendant] failed to adopt a reasonable alternative design to reduce the foreseeable risks of harm presented by the [product], then logic dictates that in order to *prove* an essential element of a claim so as to survive a motion to dismiss, a plaintiff must first plead it." *Fincher v. Monroe Cnty. Bd. of Commissioners*, No. 5:18-CV-00424-TES, 2019 WL 510448, at *5 (M.D. Ga. Feb. 8, 2019). In *Fincher*, the Middle District of Georgia dismissed a plaintiff's design defect claim for want of allegations about "reasonable alternative designs" for drug-testing kits. *Id.* at 6. Absent additional facts about the kits' design and alternatives, conclusory statements that the kits could return false positives were insufficient to allege defective design. *Id.* This Complaint similarly lacks any allegations about design alternatives. Indeed, the only alternative designs Plaintiffs identify relate to the ACU and its installation in the vehicle—not to the part allegedly supplied by ST Inc. *See* Compl. ¶¶ 9, 70.

Plaintiffs' Complaint also contains no allegations comparing the utility of the DS84 ASIC to its risks. In *Brown v. Sirchie Acquisition Co., LLC*, Judge Jones ruled that "[s]imply stating that a product feature amounts to a defect, … is not enough to

18

sustain a design defect" claim. 1:16-CV-175-SCJ, 2017 WL 4082690, at *5 (N.D. Ga. Feb. 17, 2017), *aff'd*, 694 Fed. Appx. 745 (11th Cir. 2017). Instead, a complaint must include facts enabling a court to compare a product's benefits to its risks. *Id.* Plaintiffs assert that the vehicle's ACU was particularly vulnerable to EOS. According to Plaintiffs, EOS "is a well-known phenomenon in the auto industry." Comp. ¶ 10. But the mere fact that something is "dangerous" does not make it "defective," *see Brown*, 2017 WL 4082690, at *4, and the Court cannot fill in the factual gaps to assume that the DS84 ASIC's risks outweighed its utility. *Id.*; *Fincher*, 2019 WL 510448, at *5.

Moreover, Plaintiffs' allegations focus on the design errors with the *ACU*— not its subcomponent DS84 ASIC part. *E.g.*, Compl. ¶ 19 ("The Defendants were well aware of the defective nature of their vehicle due to the ACU and the danger and harm it posed to drivers such as Plaintiffs."). According to Plaintiffs, the defect arose because the ACUs "do not adequately protect the DS84 ASIC" against transient electricity from EOS, *id.* ¶ 67, which "is especially dangerous as it can disable the ACU from functioning and cause the airbags and seatbelts to not activate during a crash, *id.* ¶ 10." At best, Plaintiffs allege a design error with the *ACUs*, not with the DS84 ASIC. *Id.*, ¶¶ 12–13, and 19.

19

### b. Plaintiffs fail to state a manufacturing defect claim (Count II).

Plaintiffs' manufacturing defect claim fails for many of the same reasons as their design defect claim. To state a manufacturing defect claim, "the plaintiff must show that the manufacturer's product when sold by the manufacturer was defective." *Ctr. Chem. Co. v. Parzini*, 234 Ga. 868, 869 (1975). Defectiveness is determined by measuring the product "against the benchmark of the manufacturer's designs." *O'Shea v. Zimmer Biomet Holdings*, Inc., 342 F. Supp. 3d 1354, 1359 (N.D. Ga. 2018). "[B]y definition, a manufacturing defect will always be identifiable as a deviation from some objective standard or a departure from the manufacturer's specifications." *Jones v. Amazing Products, Inc.*, 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002).

Plaintiffs do not allege that the DS84 ASIC deviated from its intended design, and thus they fail to state a manufacturing defect claim. Instead, they claim that the ACUs with the DS84 ASIC were more vulnerable to EOS, but not that the ASIC's vulnerability to EOS stemmed from any deviation in its intended design. These allegations do not support a defect claim as "[t]he mere failure of automobile equipment is not itself evidence of an original defect, since the failure can be the result of myriad causes not related to its manufacture." *Miller v. Ford Motor Co.*, 287 Ga. App. 642, 644 (2007).

In *Brazil*, this Court dismissed manufacturing defect claims against a drug manufacturer because the Complaint did not "suggest that the manufactured [drug] differed in any way from the manufacturer's design specifications." 196 F. Supp. 3d at 1358. That same deficiency dooms Plaintiffs' claims. Without allegations that the DS84 ASIC deviated from ST Inc.'s design specifications, Count II falls short of Rule 8's pleading requirements and should be dismissed.

### c. Strict liability only applies to manufacturers, not sellers like ST Inc. (Count III).

Strict liability for design and manufacturing defects applies only to "manufacturers." O.C.G.A. § 51-1-11(b)(1). Georgia law categorically excludes a "product seller[]" from strict liability. O.C.G.A. § 51–1–11.1(b). A "product seller" is defined as one "who, in the course of a business…sells and distributes [a product] . . . or otherwise is involved in placing a product in the stream of commerce." *Id.*; *see also Williams v. Pac. Cycle, Inc.*, 661 F. App'x 716, 718 (11th Cir. 2016) (applying definition). Thus, only product manufacturers can be strictly liable, not product sellers. Even "[a]n entity which merely affixes its label to a product and sells it under its name is a product seller rather than a manufacturer" and so not subject to strict liability. *Alltrade, Inc. v. McDonald*, 445 S.E.2d 856, 858 (Ga. Ct. App. 1994).

Plaintiffs' vague and conclusory allegations about the ST Defendants' conduct do not adequately plead that ST Inc. was the manufacturer. As this Court

stated in *Inform*, "[i]t is important to attribute the specific conduct to the specific defendant because liability among" related entities is not automatic where "there is no evidence that [all] were involved in the challenged conduct." 2021 WL 4295151, at *5. It is Plaintiffs' job to craft viable claims—not the Court's to scour through overbroad and conclusory allegations to save Plaintiffs' pleading. *See id.* Plaintiffs' undifferentiated shotgun pleading dooms their strict liability claim.

### d. The sophisticated intermediary doctrine cuts off any liability against ST Inc. for the alleged failure to warn or inspect (Counts IV and VI).

Even assuming that ST Inc. was a manufacturer (which is not adequately pleaded), Georgia law negates a manufacturer's duty to warn when a sophisticated intermediary exists to warn the end consumer of a product's known dangers. *Stiltjes v. Ridco Exterminating Co.*, 178 Ga. App. 438, 441 (1986), *aff'd*, 256 Ga. 255 (1986). In *Eyster v. Borg-Warner Corp.*, an air conditioning unit manufacturer had no duty to warn of the danger of an aluminum-copper connection because that danger "was common knowledge to those generally engaged in the [units'] installation." 131 Ga. App. 702, 706 (1974). The court distinguished the duty of manufacturers who supply directly to the public and those supplying a professional intermediary; "the manufacturer is not required to warn against risks generally known" to professionals. *Id.* at 704. Likewise, in *Stiltjes*, a pesticide manufacturer had no duty to warn potential end consumers of the dangers of skin contact with and inhalation

22

of its pesticides because it sold only to professionals, who "knew or should have known" of the dangers. 178 Ga. App. at 441.

No liability from a failure to warn or inspect can attach to ST Inc. because it did not supply products to the general public. Plaintiffs allege that the ST Defendants sold the DS84 ASIC to a sophisticated intermediary, ZF-TRW, who then incorporated it into its own ACU product, and then sold that ACU to Toyota. Compl., ¶¶ 7–8. A second sophisticated intermediary (Toyota) then manufactured a vehicle with the ACU and, through an unidentified dealership, sold it to the Plaintiffs. *Id.* ¶¶ 7, 49 There is no allegation—nor could there be—that ST Inc. made a direct sale to *any* consumer or even to Toyota, much less to Plaintiffs. Thus, ST Inc. had no duty to warn or inspect. *Eyster*, 131 Ga. App. at 704; *Stiltjes*, 178 Ga. App. at 441.

The Complaint concedes that these intermediaries were sufficiently sophisticated and knew (or should have known) of the alleged defect. Plaintiffs instead broadly state that EOS "vulnerability is dangerous, as it is commonly known within the auto industry, that some crashes cause" the discharge of "large bursts of electricity." *Id.* ¶ 9. Plaintiffs also allege that both Toyota and ZF knew that the ACUs containing the DS84 ASIC were vulnerable to EOS. *Id.*, ¶¶ 11–12, 66, 72, 88. But ZF and Toyota both allegedly also knew that EOS may affect the ACUs' function, negating ST Inc.'s duty to warn of any unspecified defect in the DS84

23

ASIC or to inspect it before Toyota's final sale to Plaintiff McFalls. These facts—the presence of intermediary with knowledge of the alleged danger—obviated any duty to warn the ultimate consumer in both *Eyster* and *Stiltjes*. They also do so here, and so Counts IV and VI should be dismissed.

### 3. No implied warranty claim (Count V) can stand because Plaintiffs lack privity with ST Inc.

As noted above, ST Inc. did not directly sell any product to Plaintiffs, dooming Plaintiffs' breach of implied warranty claim. Georgia courts have "repeatedly held" that plaintiffs lacking contractual privity with a manufacturer cannot bring an implied warranty claim against the manufacturer. *See Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 809-10 (11th Cir. 2005). "Under Georgia law, no implied warranty of merchantability exists between a manufacturer and a remote consumer because no privity of contract exists between them." *Barnes v. Medtronic, Inc., et al.*, No. 1:20-CV-04310-JPB, 2021 WL 3742436, at *2 (N.D. Ga. Aug. 24, 2021). In short, unless the defendant sold directly to the plaintiff, the sale implies no warranty. A plaintiff cannot simply point to an implied warranty arising out of a sale by the defendant to a "distributor or retailer from whom plaintiff purchased the product." *Lamb v. Georgia-Pac. Corp.*, 194 Ga. App. 848, 850 (1990).

According to Plaintiffs, there are at least two intermediaries between ST Inc. and Plaintiffs. At best, the only connection to ST Inc. is many steps removed: ST

Inc. supplied the DS84 ASIC to ZF (who incorporated the component the ACU), who sold it to Toyota (who incorporated the ACU in a vehicle), who sold it to a dealership, who sold it to Plaintiff McFalls. There is simply no privity between any Plaintiff and ST Inc., and Plaintiffs' Count V should therefore be dismissed.

## IV. <u>CONCLUSION</u>

The Court should grant this motion and dismiss Plaintiffs' Complaint because the Court lacks general or specific personal jurisdiction over ST Inc. and because Plaintiffs have failed to state a claim against it.

Dated:        July 8, 2022

Respectfully submitted,

By: s/Robert P. Debelak III

Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Megan Cambre
Georgia Bar No. 167133
cambre@bmelaw.com

Thomas F.A. Hetherington, *pro hac vice*
tom.hetherington@mhllp.com
Kendall J. Burr, *pro hac vice*
kendall.burr@mhllp.com
Robert P. Debelak III, *pro hac vice*
bobby.debelak@mhllp.com
Emily K. Felix, *pro hac vice*
emily.felix@mhllp.com

BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111

MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
Tel: 713 .337 .5580
Fax: 713 .337 .8850

**ATTORNEYS FOR DEFENDANT STMICROELECTRONICS, INC.**

Signature Page

## <u>CERTIFICATE OF COMPLIANCE</u>

Under LR 7.1(D) of the Northern District of Georgia, I hereby certify that

this document was prepared in Times New Roman font, 14 point under LR 5.1(C).

This 8th day of July, 2022.

<u>s/Robert P. Debelak III</u>
Robert P. Debelak III

Rule 7.1(D) Certificate

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing DEFENDANT STMICROELECTRONICS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND BRIEF IN SUPPORT upon counsel of record via the CM/ECF system which will send electronic notification to counsel.

This 8th day of July, 2022.

s/Robert P. Debelak III
Robert P. Debelak III

Certificate of Service